UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TENSAR INTERNATIONAL CORPORATION,** | § | |
| | § | |
| **Plaintiff/Counter-Defendant,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:25-CV-3012-B** |
| | § | |
| **INDUSTRIAL FABRICS INC.,** | § | |
| | § | |
| **Defendant/Counter-Claimant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Tensar International Corporation ("Tensar")'s Motion to Dismiss (Doc. 16) Defendant Industrial Fabrics, Inc. ("IFI")'s Counterclaim (Doc. 9). IFI filed a response (Doc. 23), and Tensar filed a reply (Doc. 28). Having considered the parties' arguments, the Court **GRANTS** the Motion and **DISMISSES** the Counterclaim **WITHOUT PREJUDICE**.

## I.

## BACKGROUND

IFI and Tensar are competing companies that both provide geotechnical engineering solutions, which is a field that involves preparing the earth's surface for construction projects. *See* Doc. 9, Countercl. ¶¶ 7–8. Tensar owns two registered trademarks: one for "TX5" (Reg. No. 4,726,327) and the other for "TX7" (Reg. No. 4,726,328). *Id.* ¶ 9. The TX5 and TX7 trademarks generally cover "plastic mesh materials for construction or civil engineering solutions." *Id.* ¶ 10. Tensar initially launched this lawsuit alleging that IFI had been selling plastic mesh materials or "geogrids" using Tensar's TX5 and TX7 trademarks. *See* Doc. 1, Compl. ¶¶ 20–33.

IFI countersued to cancel Tensar's two trademark registrations. *See* Doc. 9, Countercl.

¶¶ 22–27. In support of cancellation, IFI advances three theories. *See* Doc. 23, Resp., 1. First, IFI asserts that the TX5 and TX7 trademarks are "generic names for Tensar's goods and are used by Tensar in that manner." Doc. 9, Countercl. ¶ 13. According to IFI, Tensar has an overarching brand of geogrid products called "Tensar TriAX® (TX) Geogrids," and TX5 and TX7 refer to just two of the products within the TriAx product line. *See id.* ¶¶ 12–13. Under IFI's theory, "Tensar" and "TriAx" are the "trademarks identifying source, while TX5 and TX7 serve as product designations within the TriAx line." Doc. 23, Resp., 2.

IFI's second cancellation theory is that "Tensar has never used the marks as trademarks." *Id.* at 1. To be clear, IFI acknowledges that Tensar uses "TX5" and "TX7" labels on its products. *See id.* at 8. But when using those labels, according to IFI, Tensar does not include a "®" or "™" symbol to "provide notice of the Trademarks." Doc. 9, Countercl. ¶ 18. And, although Tensar lists "Tensar" and "TriAx" as its trademarks in the intellectual property disclosure sections on its products, it does not list "TX5" or "TX7" in those sections. *See id.* ¶ 19. According to IFI, Tensar's use of "TX5" and "TX7" on its products has been merely for "product designation and model code," not as "trademarks identifying source." Doc. 23, Resp., 8.

IFI's final cancellation theory is alternative to the second one: if in fact Tensar ever did use "TX5" or "TX7" as trademarks, Tensar has since abandoned that use. *See* Doc. 9, Countercl. ¶ 20. Again, IFI does not dispute that Tensar has continued to use the "TX5" and "TX7" labels on its products. *See* Doc. 23, Resp., 8. But IFI calls those uses "isolated or 'token' uses made merely to reserve rights," rather than "bona fide trademark use." *Id.*

Tensar moved to dismiss IFI's cancellation counterclaim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See* Doc. 16, Mot., 1. The Court considers the Motion

below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes motions to dismiss for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion to dismiss, a "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff" (or here, the counterclaimant). *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Although courts "must accept as true all factual allegations in the complaint, that presumption does not extend to legal conclusions." *Edmiston v. La. Small Bus. Dev. Ctr.*, 931 F.3d 403, 406 (5th Cir. 2019) (citing *Ashcroft*, 556 U.S. at 678).

## III.

## ANALYSIS

Taking all facts as alleged, none of the three theories under which IFI seeks to cancel Tensar's trademarks is workable. The Court first addresses IFI's genericness theory. Then, the Court addresses IFI's "never used" and "abandoned use" theories together. Finally, the Court explains why dismissal must be without prejudice but is also without leave to amend.

A. *IFI's Genericness Theory Does Not Work.*

Generic marks cannot be legally protected as trademarks. *See Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 537 (5th Cir. 2015) (citations omitted) ("To be legally protectable, a mark must be 'distinctive' . . . . [G]eneric marks cannot be distinctive . . . ."). "A *generic* term is the name of a particular genus or class of which an individual article or service is but a member." *Id.* at 538 (other citation omitted) (quoting *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 241 (5th Cir. 2010)). "A generic term connotes the basic nature of articles or services rather than the more individualized characteristics of a particular product." *Amazing Spaces*, 608 F.3d at 241 (citation omitted). For example, terms like "aspirin" or "cellophane" today refer to the type of product generally, so using those generic terms as your product's name would not merit trademark protection. *See id.*

IFI's genericness theory does not work because it alleges that the two trademarks—TX5 and TX7—"refer to two of Tensar's TriAx branded geogrid products." Doc. 9, Countercl. ¶ 13. For those terms to be considered generic, they would need to refer generally to the type of product—perhaps, something like "geogrid" or "plastic mesh material." IFI alleges (and does not shift from the allegation in its response brief) that "TX5" and "TX7" refer to specific products in Tensar's line. *See* Doc. 23, Resp., 2. The terms therefore are not generic.

B. *IFI's "Never Used" and Abandonment Theories Do Not Work.*

"A mark shall be deemed to be 'abandoned' . . . [w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. "'Use' of a mark means the *bona fide use* of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." *Id.* (emphasis added). "Intent not to resume may be inferred from circumstances." *Id.*

IFI's "never used" and abandonment theories both focus on one purpose of using trademarks, which is "to indicate the source of the goods, even if that source is unknown." *See id.* Tensar conspicuously displays "TX5" and "TX7" on the advertisements and packaging for those respective products. *See* Docs. 9-4 to 9-11, Countercl. Ex. Nos. 4–11. But, according to IFI, Tensar never used or at some point stopped using "TX5" and "TX7" to identify the source of those products, so Tensar therefore never engaged or at some point ceased engaging in "bona fide use." *See* Doc. 23, Resp., 8 ("IFI's claim is not that the words TX5 and TX7 never appeared anywhere; it is that Tensar never used them as trademarks identifying source, and that any appearances have been for product designation or model code." (citing Doc. 9, Countercl. ¶ 19)). To support its conclusion, IFI alleges (1) that Tensar sometimes does not use the "®" or "™" symbols with the "TX5" and "TX7" marks, despite using those symbols for other trademarks; and (2) that Tensar does not list "TX5" and "TX7" as its intellectual property, despite listing other trademarks. *See id.* at 9 ("IFI pleads that Tensar's consistent omission of trademark notice for TX5 and TX7, coupled with Tensar's selective trademark treatment in the same materials, is circumstantial evidence that Tensar does not treat TX5 and TX7 as trademarks." (citing Doc. 9, Countercl. ¶¶ 18–20)).

By no plausible stretch do the alleged facts have the legal significance that IFI wishes that they had. For starters, not using the "®" symbol and not listing the "TX5" and "TX7" trademarks in intellectual property disclosures are not part of the abandonment analysis under § 1127. What matters is whether the mark is being genuinely used (i.e., "bona fide use") "in the ordinary course of trade." *See id.*

More to the point, IFI's circumstantial allegations do not add up to a plausible lack of bona fide use. A lack of bona fide use could exist, for example, when a company spends millions of dollars

changing its name but continues to use the old name "in ways other than as a primary brand name." *See Exxon Corp. v. Humble Expl. Co.*, 695 F.2d 96, 98 (5th Cir. 1983). In *Exxon*, the non-bona fide use included less than $200 worth of sales under the old brand name, the formation of shell companies as "name protection companies," and selling bulk fuel to customers under the new name but with the old name on the invoice. *See id.* The old mark "was used only on isolated products or selected invoices sent to selected customers," and "[n]o sales were made that depended upon the [old] mark for identification of source." *Id.* at 100. Thus, the "arranged sales in which the [old] mark was not allowed to play its basic role of identifying source were not 'use' in the sense of section 1127 of the Lanham Act." *Id.* at 101. In contrast to *Exxon*'s facts, here, Tensar advertises and labels its TX5 and TX7 products consistently with those marks. IFI has not plausibly alleged that Tensar has engaged in a just-for-show labeling of those products to preserve trademark rights that it is not genuinely using. Thus, IFI has not pleaded necessary facts to support its abandonment theory.

At bottom, IFI's legal theories for cancellation are not workable under the facts that it has alleged. IFI argues that the Court should infer in IFI's favor that the appearances of "TX5" and "TX7" are mere product designations that do not identify source, as trademarks must. *See* Doc. 23, Resp., 11. What IFI calls a factual inference is really a legal argument that a "product designation" is wholly distinct from use as a trademark. True, if "TX5" and "TX7" were merely internal codes used by Tensar to distinguish its various geogrids, IFI's argument might have had some teeth. But that is not what IFI has factually alleged. According to IFI's allegations, "TX5" and "TX7" are public-facing labels that Tensar uses to sell the TX5 and TX7 products. Although the Court must take all facts in the light most favorable to IFI, it need not and ought not blindly accept IFI's legal conclusions. *See Edmiston*, 931 F.3d at 406 (citation omitted).

C. *Dismissal is Without Prejudice But Without Leave to Amend.*

Dismissal of IFI's counterclaim for cancellation of Tensar's trademarks must be without prejudice because the Court has power to cancel a registered trademark under 15 U.S.C. § 1119, independent of IFI's counterclaim. *See* 4 *McCarthy on Trademarks & Unfair Competition* § 30:109 (5th ed., June 2026 update) ("If a party fails to include a counterclaim for cancellation and prevails on the underlying trademark issues, the trial court has the discretion to either amend the judgment to include cancellation or to refuse to do so . . . ."). But whether IFI should be granted leave to amend is a separate question that "is entrusted to the sound discretion of the district court." *Young v. U.S. Postal Serv. ex rel. Donahoe*, 620 F. App'x 241, 245 (5th Cir. 2015) (citations omitted). "Denial of leave to amend is appropriate where there is no indication that amendment would cure the defects in a complaint." *Id.* (citations omitted). IFI has not explained, nor is it apparent, what facts (that do not contradict those IFI has already pleaded) would cure the defects in IFI's legal theories for cancellation. Therefore, the Court denies leave to amend.

**IV.**

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Tensar's Motion to Dismiss (Doc. 16). IFI's Counterclaim (Doc. 9) is **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**

**SIGNED: August 10, 2026.**

JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE